UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt,<br><br>    Petitioner,<br><br>v.<br><br>Kent Grandlienard,<br><br>    Respondent. | Civil No. 13-3573 (SRN/SER)<br><br>**REPORT AND RECOMMENDATION** |

Joel Marvin Munt, MCF Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, Petitioner, *pro se*.

Patrick Raymond McDermott, Esq., and Susan B. DeVos, Esq., Blue Earth County Attorney's Office, and Matthew Frank, Esq., and James B. Early, Esq., Minnesota Attorney General's Office, counsel for Respondent.

STEVEN E. RAU, United States Magistrate Judge

## INTRODUCTION

This matter is before the undersigned United States Magistrate Judge on Petitioner Joel Marvin Munt's application for habeas corpus relief under 28 U.S.C. § 2254. (Doc. No. 11, Am. Pet.) This matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. Currently, Petitioner is serving a life sentence without the possibility for parole in the Oak Park Heights – Minnesota Correctional Facility located in Stillwater, Minnesota. He is serving that sentence pursuant to convictions for first-degree murder arising from, *inter alia*, the shooting death of his ex-wife and the kidnapping of their three children. In

his Amended Petition[1] for habeas corpus relief, Petitioner claims that he was tried by a biased jury in violation of Sixth Amendment rights, that his conviction was marred by prosecutorial misconduct, that he received ineffective assistance of counsel, and that there was a lack of evidence to support his conviction. Because none of these claims warrants issuance of a writ of habeas corpus, this Court recommends that the Amended Petition be denied and this action be dismissed with prejudice.

## BACKGROUND

Petitioner was convicted of the shooting death of his ex-wife, Svetlana, and kidnapping of his three children.[2] Petitioner met Svetlana, through a Russian internet dating service, and the two were eventually married and had three children together. Svetlana reported domestic abuse to the police during their marriage. Petitioner later initiated divorce proceedings and, in turn, accused Svetlana of mistreating the children. Significant disagreements ensued regarding visitation schedules. In March of 2010, Petitioner spotted Svetlana driving her vehicle near a park following a scheduled visitation with their children. He drove his own vehicle into the driver's side of her car, pinned her car to a tree, got out of his vehicle, and shot Svetlana four times in the head with a pistol. After he shot Svetlana, Petitioner took the keys to a witness's vehicle and left with his children, all three of whom had been in Svetlana's vehicle. As a result of these events, the State charged Petitioner with four counts of first-degree murder, one count of

---

[1] Petitioner initially filed a prolix habeas petition (Doc. No. 1) and supporting memorandum (Doc. No. 2), which totaled 159 pages. Because his initial pleadings were unduly burdensome, this Court ordered them stricken from the record in a February 2, 2014 Order. (Doc. No. 8.) Petitioner's Amended Petition (Doc. No. 11) and supporting memorandum (Doc. No. 12) focused Petitioner's claims as required by the Court's February 2, 2014 Order.

[2] The Court draws the following summary of facts from the Minnesota Supreme Court's opinion in *State v. Munt*, 831 N.W.2d 569, 574-76 (Minn. 2013).

second-degree murder, two counts of first-degree aggravated robbery, three counts of second-degree assault, three counts of kidnapping, and three counts of criminal vehicular operation causing injury. Petitioner pleaded not guilty and not guilty by reason of mental illness. The trial court held a bifurcated jury trial. After the first phase of the trial, the jury found Petitioner guilty of all counts, but acquitted him of heat-of-passion manslaughter, a lesser-included offense. During the second phase of the trial, the jury rejected Petitioner's not-guilty-by-reason-of-mental-illness defense.

On direct appeal, Petitioner raised five separate claims through counsel and a host of *pro se* claims. First, he argued that the district court erred when it refused to remove a juror identified by the initials B.S., arguing that B.S. expressed actual bias against Petitioner's mental-illness defense, and that seating B.S. on the jury deprived him of a fair trial. *Munt*, 831 N.W.2d at 576-80. Second, Petitioner argues that the trial judge made comments during phase two of the bifurcated trial that showed bias and that his comments prejudicially influenced the jury's verdict. *Id.* at 580-82. Third, Petitioner argued that the trial court deprived him of his right to present a complete defense because he was not allowed to reappear as a surrebuttal witness to explain why his children's car seats were in his car on the date Svetlana died.[3] *Id.* at 582-84. Fourth, Petitioner argued that the district court erred by refusing to allow his 9-year-old daughter to testify at trial, thereby depriving him of the right to present a complete defense. *Id.* at 585-86. And fifth, Petitioner argued that the district court should have conducted an inquiry into his complaints about the assistance his defense counsel provided; he contended that the court should

---

[3]  The prosecutor argued at trial that the fact the car seats were in Petitioner's car at the time of the killing was evidence that Petitioner planned to kill Svetlana and take the children, supporting a guilty verdict on the most serious count of first-degree premeditated murder.

have considered whether he was entitled to substitute counsel. *Id.* at 586-87. The Minnesota Supreme Court rejected all of these claims.

In Petitioner's *pro se* brief, he argued that his conviction was marred by prosecutorial misconduct because the prosecutor referred to facts not in evidence during closing argument. *Munt*, 831 N.W.2d at 587. He also contended that in addition to the seating of B.S. on the jury, several other jurors were impaneled that indicated during voir dire that they could not be impartial. *Id.* at 588. And according to the Minnesota Supreme Court, Petitioner raised several other claims that he failed to support with arguments or legal authority. *Id.* As with the claims raised through appellate counsel, the Minnesota Supreme Court rejected all of Petitioner's *pro se* arguments.

On December 19, 2013, Petitioner filed his original petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1.) The Court required Petitioner to amend his petition and allowed him to file a supporting memorandum that focused his claims more narrowly than he originally presented them to the Court. (Doc. No. 8.) Petitioner then filed an Amended Petition (Doc. No. 11, Am. Pet.), raising the following four claims:

(1) He was deprived of his Sixth Amendment right to a fair trial by an impartial jury by the district court's failure to remove five jurors (B.S., A.M., L.S., R.S., and M.L.);

(2) His due process rights under the Fourteenth Amendment were violated by the state prosecutor's references to facts not in evidence during closing argument;

(3) His Sixth Amendment right to counsel was violated by the ineffectiveness of his appointed defense counsel, which manifested itself in several ways; and

(4) There was a lack of evidence to support a conviction for premeditated murder, no evidence to show that the murder involved a past pattern of domestic violence, no proof of specific intent, and inconsistent verdicts for premeditated and non-premeditated murder.

(Am. Pet. 7-11). These claims do not entitle Petitioner to a writ of habeas corpus based on the Court's examination of the record, the parties' arguments, and all the files and proceedings herein. Accordingly, as explained in the following discussion, the Court recommends that Petitioner's application for a writ of habeas corpus be denied and that this action be dismissed in its entirety.

## DISCUSSION

### I. AEDPA Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of Petitioner's habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> The Eighth Circuit has explained:
>
> A state court decision is "contrary to" clearly established federal law if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." A state court "unreasonably applies" Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

5

A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record. *See id.*

A federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt. . . ." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. *See, e.g.*, *Harrington v. Richter*, 131 S. Ct. 770, 785–86 (2011) (explaining the burdens faced by a federal habeas petitioner seeking relief based on an alleged error by the state court). Moreover, the petitioner must show that the error is one that is actionable under § 2254(d). *See id.* The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

## II.    Ground One – Violation of Right to Fair Trial by an Impartial Jury

Petitioner's first claim is that he was deprived of his Sixth Amendment right to a fair trial because the trial court sat several jurors despite their statements during voir dire that showed bias. The Due Process Clause of the Fourteenth Amendment guarantees the Sixth Amendment

right of a jury trial in state criminal prosecutions. *Pruett v. Norris*, 153 F.3d 579, 584 (8th Cir. 1998). This right includes the right to trial by an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To succeed on a claim of juror bias, a petitioner "must show that the juror was actually biased against him." *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995). To demonstrate actual bias, a petition must show "an impermissible affirmative statement." *Williams v. Norris*, 612 F.3d 941, 954-55 (8th Cir. 2010). Federal courts performing habeas review defer to state court findings regarding juror bias when the record fairly supports such a finding, and a determination by a trial judge that jurors are qualified is a question of fact subject to a presumption of correctness. *Antwine v. Delo*, 54 F.3d 1357, 1359 (8th Cir. 1995).

This Court concludes that Petitioner has not shown that he is entitled to a writ of habeas corpus regarding the empaneling of any of the jurors he claims were seated improperly. Petitioner claims that five jurors demonstrated their inability to judge his case impartially during the voir dire process. In his briefing, Petitioner failed to show that the Minnesota Supreme Court reached a decision contrary to any United States Supreme Court precedent involving materially indistinguishable facts. He also failed to show that the Minnesota Supreme Court's decision involved an unreasonable application of a clearly established legal standard determined by the United States Supreme Court.

Petitioner identifies three U.S. Supreme Court decisions in his Memorandum (Doc. No. 12 at 2): *Morgan v. Illinois*, 504 U.S. 719, 729 (1992); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); and *Reynolds v. United States*, 98 U.S. 145, 155 (1878). None of these cases, however, stand for the absolute proposition that jurors who gained knowledge about a case before it is tried or who have formed some preconceived notion as to the guilt or innocence of the accused cannot, under any circumstances be permitted on a jury. *Reynolds* acknowledged before the 20th

century that a jury pool was likely to be composed of community members who would have learned something of the case and who may have "some opinion in respect to its merits," but a reviewing court could not lightly set aside the trial court's finding that a juror was qualified. 98 U.S. at 156. The same is true of the relevant discussion in *Irvin*, 366 U.S. at 722-23 (explaining that "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard"), and *Morgan*, 504 U.S. at (establishing voir dire requirements in capital punishment cases to determine whether prospective jurors will automatically vote for the death penalty). Thus, Petitioner has not pointed this Court to any Supreme Court precedent establishing that he is entitled to relief under 28 U.S.C. § 2254, and the AEDPA prohibits this Court from making its own *de novo* determination regarding the propriety of the makeup of his jury.

As to Petitioner's specific arguments, Petitioner first contends that juror B.S. made an affirmative statement of bias against him when she stated that she would hold a defendant responsible for a crime even if the person were mentally ill, and that the trial court erroneously failed to remove the juror or try to rehabilitate her. (Doc. No. 12 at 2.) The Minnesota Supreme Court considered and rejected this claim in its opinion on direct appeal, explaining that B.S.'s answers during voir dire did not rise to the level of actual bias, and that her statements did not demonstrate actual bias when viewed in the context of her entire voir dire testimony. *See Munt*, 831 N.W.2d at 576-80 (applying the *Irvin v. Dowd* standard for determining juror bias). The state supreme court analyzed whether B.S. had shown an inability to view the case against Petitioner impartially because of her statements concerning "mental illness." It determined that B.S. had expressed no preconceived notion about the way to apply the legal standard for

determining whether a defendant is not guilty by reason of mental illness. And it found that, overall, she was capable of reaching a fair and impartial verdict in the case based on her ability to follow the trial court's instructions and fairly evaluate Petitioner's mental illness defense. *Id.* at 577-80. The Court reviewed the transcripts concerning B.S.'s voir dire testimony, which provide ample support for the Minnesota Supreme Court's conclusion. B.S. testified as to her belief that a person who was claiming to be not guilty by reason of having a mental illness would have been aware of what he had done if he had made a confession, she also testified that she could follow the judge's instructions in a fair and impartial way. (Doc. No. 16, Section B, Voir Dire Tr. 280-81.) Based on the record before the Court, and in light of the deferential standard federal courts reviewing habeas corpus petitions must apply to claims of this nature, and in light of the applicable AEDPA standard, this Court concludes that Petitioner has failed to demonstrate that the Minnesota Supreme Court's decision regarding the bias of B.S. "was so lacking in justification" that the law prohibited "any possibility for fairminded disagreement." *See Harrington*, 131 S. Ct. at 786–87. Petitioner's claims regarding B.S.'s presence on the jury entitle him to no relief.

Next, Petitioner claims that juror M.L. was incapable of trying the case impartially. (Doc. No. 12 at 3.) He argues that M.L.'s responses to a juror questionnaire and her answers during voir dire revealed that she sold lumber to a witness in the case who incriminated Petitioner, that she had learned about the case on television, had predetermined that Petitioner "definitely shot his wife," and stated that she would "still believe that [Petitioner] did the act" when asked if she could set her initial reactions aside. (*Id.* at 3-4.) The Minnesota Supreme Court addressed Petitioner's claims regarding the alleged bias of M.L. in its opinion on direct appeal. It noted that M.L. believed it would be "'tough'" for her to set aside her belief that

Petitioner shot his ex-wife Svetlana, and that although she sold lumber to the witness in question many years before Petitioner's trial, M.L. was rehabilitated by her statements that her association with the witness would not prevent her from being fair, that she could set aside what she heard about the case in the media, and that she could be impartial and base her decision on the evidence and the law as instructed. *Munt*, 831 N.W.2d at 588. Here too, Petitioner has failed to show that the state supreme court's finding that M.L. was not biased was founded upon an application of clearly established federal law as determined by the Supreme Court or an unreasonable determination of the facts. The record demonstrates that M.L. testified that she could set aside what she heard in the media about the case months before the trial, that she could base her verdict on the evidence in court, and that she could have an open mind about Petitioner's mental illness defense. (Doc. No. 16, Section E, Voir Dire Tr. 545-47.) The United States Supreme Court has explained that jurors do not need to be totally ignorant of the facts and issues involved in a case to be impartial and that it would establish an "impossible standard" to hold that "the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality." *Irvin*, 366 U.S. at 722-23. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* In light of these standards, there was nothing unreasonable about the state courts' rejection of Petitioner's claims regarding M.L.

Petitioner also raises claims regarding jurors A.M., L.S., and R.S.[4] (Doc. No. 12 at 2-3.) He contends that A.M. stated in the juror questionnaire that she believed the defendant was

---

[4]     Having reviewed the Petitioner's pro se supplemental brief during his direct appeal in state court, this Court is satisfied that he presented claims regarding juror bias for these

(Footnote Continued on Following Page)

guilty. (*Id.* at 2.) He argues that although L.S. admitted to reading about the case in his juror questionnaire, he told the trial judge that he knew nothing about the case. (*Id.* at 3.) And he asserts that R.S. was personally familiar with the prosecutors and members of the police force and did regular work for one of the victims. (*Id.*) Although the Minnesota Supreme Court did not address any claims regarding these jurors in its opinion on direct appeal, it did note that Petitioner argued in his *pro se* supplemental brief that several jurors had been improperly seated due to bias and concluded that none of those jurors "admitted to actual bias; or alternatively, were rehabilitated." *Munt*, 831 N.W.2d at 588. As with jurors B.S. and M.L., this Court's review of the relevant trial transcripts shows that nothing about the Minnesota Supreme Court's rejection of Petitioner's *pro se* claims concerning the seating of these jurors involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court or an unreasonable determination of the facts in light of the evidence presented at the state court hearing. *See* 28 U.S.C. § 2254(d).

### III.   Ground Two – Prosecutorial Misconduct

In Ground Two of his Amended Petition, Petitioner contends that he is entitled to the writ of habeas corpus because of prosecutorial misconduct in a closing argument unsupported by facts in evidence. (*See* Am. Pet. at 7-8.) Although "[a] prosecutor must limit the closing argument to the evidence and the reasonable inferences that may be drawn from it," *United States v. Eagle*, 515 F.3d 794, 805 (8th Cir. 2008), habeas review for a claim regarding a

---

(Footnote Continued from Previous Page)
individual jurors during his criminal appeal. (Doc. No. 16, Section K at 33-34 (R.S.); *id.* at 40 (A.M.); *id.* at 40 (L.S.).) It is not clear, however, that Petitioner fairly presented the claim to the state court for purposes of preserving federal habeas review because he did not explicitly cite to the United States Constitution or federal case law in his direct appeal. *See Morris v. Norris*, 83 F.3d 268, 270 (8th Cir. 1996). This Court nevertheless addresses these claims on their merits and determines that they do not entitle Petitioner to any relief.

11

prosecutor's closing argument is "exceptionally limited." *See James v. Bowersox*, 817 F.3d 866, 869 (8th Cir. 1999). "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Id.*

The Minnesota Supreme Court considered Petitioner's claims of prosecutorial misconduct in the direct appeal. Petitioner claimed in his *pro se* supplemental brief that the State referred to facts not in evidence during the closing. *Munt*, 831 N.W.2d at 587. The court rejected Petitioner's claim that the prosecutor violated his right to a fair trial by referencing his "selfishness" during closing argument because there was evidence in the record that he "caused serious injury to one of his sons, controlled Svetlana, and abused the children." *Id.*

Petitioner raises the same argument in this case, claiming that "selfishness is not a crime" and that by making that a theme of the closing argument, the prosecutor intentionally inflamed the prejudices of the jury. (*See* Doc. No. 12 at 9-10.) In cases with far more egregious comments in prosecutors' closing statements, courts have held that habeas petitioners were not denied the fairness the Due Process clause of the Fourteenth Amendment requires. *See Kellogg v. Skon*, 176 F.3d 447, 451-52 (8th Cir. 1999) (finding that where the prosecutor referred to the petitioner as a "monster," "sexual deviant," and a "liar," while comments had "no place in the courtroom," they did not render the entire trial fundamentally unfair); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (holding that reference to the defendant as an "animal" was not a due process violation). Here, the Minnesota Supreme Court's rejection of this claim did not involve an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court nor was it a decision that was contrary to any U.S. Supreme Court precedent.

The Minnesota Supreme Court also considered and rejected Petitioner's arguments that it was improper for the prosecutor to argue that Petitioner knew Svetlana "more likely than not" would be at the park where he shot her on the morning of her death, that Petitioner "finally had his opportunity to act," "planned" the killing, and "acted in 'cold blood.'" *Munt*, 831 N.W.2d at 587-88. The court explained that there was ample support in the record to support these statements and that the remarks about the killing being planned and Petitioner acting in cold blood were "components of the State's overall case for premeditation." *Id.* at 588. Petitioner raises similar claims here, arguing that the prosecutor improperly injected his own opinion into the closing argument with these statements. (*See* Doc. No. 12 at 6-7.) Nonetheless, Petitioner failed to support his claim that unconstitutional prosecutorial conduct was the reason for his conviction. His arguments on these claims essentially ask this Court to conduct a *de novo* review of the record and reach a different conclusion than the decision of the state courts. He points to nothing showing that the state courts reached a decision contrary to or involving an unreasonable application of federal law as determined by the U.S. Supreme Court. 28 U.S.C. § 2254(d). Nor has Petitioner shown that the state courts' rejection of these claims was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, Petitioner has failed to demonstrate that he is entitled to a writ of habeas corpus based on his claims of prosecutorial misconduct.

### IV. Ground Three – Ineffective Assistance of Counsel

Petitioner next claims that he was denied the right to effective assistance of counsel because his lawyers told him that they "have to work with these people" (meaning the judge and the prosecutor) when he tried to get them to raise arguments they did not want to present, thereby choosing to represent their own interests instead of Petitioner's interests. (*See* Doc. No. 12 at 12-

13

15.) He also claims that his attorneys were ineffective because they failed to procure a timely mental evaluation of Petitioner, failed to "attempt to impeach government witnesses and motives," failed to "elicit needed expert testimony," failed to "pursue alternative defense strategies," and failed to "attack the essential elements of the charges." (Doc. No. 12 at 14; *see also* Am. Pet. at 9 (raising same arguments).)

The Minnesota Supreme Court addressed Petitioner's appellate counsel's claim that the trial court erred by refusing to inquire into the nature of his pretrial complaints regarding the effectiveness of appointed counsel and that Petitioner should have been provided an evidentiary hearing on those issues. *Munt*, 831 N.W.2d at 586-87. The Minnesota Supreme Court also acknowledged that Petitioner raised claims of ineffective assistance of counsel in his *pro se* supplemental brief, but declined to address those claims because Petitioner failed "to cite any evidence in the record or legal authority" to support them. *Munt*, 831 N.W.2d at 588. The court considered these claims waived. *See id.* (citing *State v. Sontoya*, 788 N.W.2d 868, 876 (Minn. 2010) (refusing to consider *pro se* claim on appeal where appellant waived the claim by failing to cite to the record or legal authority to support it), and *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) (deeming appellant to have waived unsupported *pro se* claims).

Nothing in Petitioner's Amended Petition or supporting memoranda suggests that the Minnesota Supreme Court's resolution of Petitioner's claim that the trial court should have conducted an inquiry into his pretrial complaints about his attorneys was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). To the extent Petitioner intends to have raised that claim in this habeas proceeding, this Court concludes that he is entitled to no relief.

14

The record also supports the Minnesota Supreme Court's determination that Petitioner waived his other ineffective-assistance claims as a matter of state procedural law. The relevant portions of Petitioner's *pro se* supplemental brief on direct appeal do not contain any citation to legal authority or citations to the record. (Doc. No. 6, Section K at 46-58.) When a prisoner fails to provide the state courts a meaningful opportunity to correct a federal constitutional violation, such as ineffective assistance of counsel, and when state procedural rules preclude the prisoner from presenting the federal claims in state court, the federal claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991) (applying the independent and adequate state law ground doctrine in the habeas context). As noted above, the state procedural rule relevant in this case is found in *State v. Sontoya*, 788 N.W.2d 868, 876 (Minn. 2010), and *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008), and pursuant to that rule, *pro se* claims are deemed waived on appeal if the claims are unsupported by citation to the record or legal authority. Where a state court relies on a procedural rule to decline to consider the merits of a claim on appeal, and that rule is firmly established and regularly followed, such claims are procedurally defaulted for purposes of federal habeas review. *See Barnett v. Roper*, 541 F.3d 804, 808-10 (8th Cir. 2008) (concluding that a Missouri procedural rule precluding consideration of the merits of habeas petitioner's ineffective assistance of counsel claims was firmly established and regularly followed such that claims were procedurally defaulted for purposes of habeas review). Because the Minnesota courts regularly follow the firmly established waiver rule applied in Petitioner's direct appeal, this Court concludes that these claims are procedurally defaulted. *See Balderas v. Minnesota*, Civil No. 07-1311 (JNE/JSM), 2008 WL 495535, at*8 (D. Minn. Feb. 20, 2008) (concluding that ineffective assistance of counsel claim was procedurally defaulted where Minnesota appellate courts deemed it waived because it was not accompanied by factual

or legal support); *see also Hill v. Minnesota*, Civil No. 12-3166 (JNE/SER), 2013 WL 7389510, at *8 (D. Minn. Nov. 18, 2013) (citing, among other cases, *State v. Bartylla*, 755 N.W.2d 8, 22-23 (Minn. 2008), for the proposition that "Minnesota's procedural bar of claims that are not supported by argument and authority is established and followed regularly")), *adopted by* 2014 WL 668162 (D. Minn. Feb. 20, 2014).[5] Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## V.    Ground Four – Insufficiency of the Evidence

Petitioner's fourth ground in the Amended Petition is labeled as "Lack of Evidence to Support a Conviction," which the Court construes as an insufficiency-of-the-evidence claim, and Petitioner presents several arguments. (Am. Pet. at 10.) Petitioner contends: (1) that the prosecution failed to present evidence of premeditation; (2) that the prosecution failed to present evidence of a past pattern of domestic violence; and (3) that the jury returned inconsistent verdicts since he was "convicted of both premeditated and non-premeditated murder for the same alleged act." (*Id.*) Petitioner's Memorandum also indicates that he believes the prosecution failed to prove intent, failed to prove he committed a drive-by-shooting, and failed to prove that there was a kidnapping that facilitated a felony. (Doc. No. 12 at 19-22.) The Minnesota Supreme Court did not address these claims in its opinion on direct appeal.[6]

---

[5]  Nothing in the record suggests that there is cause for Petitioner's default of these claims and actual prejudice, nor that the failure to consider his claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (providing exceptions to the procedural-default rule).

[6]  Because there is no state court decision concerning these claims for this Court to review, this Court could not sensibly consider the merits of these claims, even if it was inclined to do so, without engaging in an improper *de novo* review of the record. Federal habeas courts apply a "twice-deferential" standard of review to insufficiency-of-the-evidence claims because (1) the state court must first be deferential to a jury's verdict when an insufficiency-of-the-evidence
(Footnote Continued on Following Page)

Based on this Court's review of the record, including Petitioner's *pro se* supplemental brief to the Minnesota Supreme Court, Petitioner did not raise these claims during his direct appeal. (*See* Doc. No. 16, Sections I & K, *passim*.)  When a prisoner such as Petitioner has not presented his state court remedies for a particular claim, and state procedural rules would preclude him from raising those claims in a state court, such claims have been procedurally defaulted.  *See McCall v. Benson*, 114 F.3d 754, 757-58 (8th Cir. 1997) (explaining that the petitioner failed to raise the federal constitutional basis for claims during his direct appeal and was precluded from raising them in a new state court proceeding by a state procedural rule). Here, Minnesota state law prevents Petitioner from raising these claims now in a state court proceeding because Minnesota law provides that once the petitioner has appealed his sentence directly "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."  *See State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976).  There is no basis on which this Court could conclude that Petitioner's insufficiency-of-the evidence claims were unknown to him at the time of his direct appeal.  Petitioner defaulted on those claims because he failed to pursue them on direct appeal. *Id.*   And this Court cannot now review these claims on their merits unless Petitioner demonstrates that there is either cause for the default and actual prejudice, or that failing to consider those claims would result in a fundamental miscarriage of justice.  *McCall*, 114 F.3d at

---

(Footnote Continued from Previous Page)
claim is reviewed on direct appeal, and (2) under AEDPA, a federal court must be deferential to the state court's resolution of an insufficiency-of-the-evidence claim in a § 2254 habeas corpus proceeding.  *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012).  To address these claims now would mean that this Court would have to guess what result the Minnesota Supreme Court might have reached if Petitioner presented these claims on appeal, and then, somehow, apply the "twice-deferential" standard to that hypothetical conclusion.

758 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Neither exception is applicable here.

## VI. Certificate of Appealability

If the District Court adopts this Report and Recommendation, Hill must seek a Certificate of Appealability ("COA"), if he wishes to appeal to the Eighth Circuit Court of Appeals. Fed. R. App. P. 22(b). Federal district courts cannot grant a COA unless the habeas petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Armstrong v. Hobbs*, 664 F.3d 1137, 1143 (8th Cir. 2011) *reh'g granted, judgment vacated* (Jan. 23, 2012), *on reh'g*, 698 F.3d 1063 (8th Cir. 2012). "Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253." *Kramer v. Kemna*, 21 F.3d 305, 307 (8th Cir.1 994). To make a substantial showing of the denial of a constitutional right, the petitioner must show that the issues to be raised on appeal are debatable among reasonable jurists or that a different court could resolve the issues differently, or that the issues otherwise deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994)).

The issues raised here are straightforward, and it is unlikely, given the very deferential habeas standard of review, that another court would resolve the issues differently. This Court therefore recommends that if the District Court adopts this Report and Recommendation, a COA should not issue.

### RECOMMENDATION

Based on the above, and on all the files and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 11), be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. Petitioner should **NOT** be granted a Certificate of Appealability.

Dated:  November 4, 2014                              *s/Steven E Rau*
                                                      Steven E. Rau
                                                      U.S. Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 18, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.