## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt, | Case No. 13-cv-3573 (SRN/SER) |
| Petitioner, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Kent Grandlienard, | |
| Respondent. | |

Joel Marvin Munt, MCF Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, pro se.

Patrick Raymond McDermott and Susan B. DeVos, Blue Earth County Attorney's Office, P.O. Box 3129, Mankato, MN 56002-3129; and Matthew Frank and James B. Early, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101-2134, on behalf of Respondent.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Petitioner Joel Marvin Munt's Objections [Doc. No. 28] to United States Magistrate Judge Steven E. Rau's November 4, 2014, Report and Recommendation ("R & R") [Doc. No. 24].  The Magistrate Judge recommended that Petitioner's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 11] be denied, the action be dismissed with prejudice, and a Certificate of Appealability not be granted.  For the reasons set forth below, the Court adopts nearly all of the Magistrate Judge's recommendations in the R & R, with the exception of his denial of a Certificate of

Appealability as to Petitioner's Sixth Amendment claim for the right to an impartial jury, to

the extent that the claim relates to the state trial court's failure to remove juror B.S.

Petitioner's objections are, therefore, overruled except as to the limited issue of the

Certificate of Appealability as set forth below.

## II.    BACKGROUND

The factual and procedural background of Petitioner's case is well documented in the

Magistrate Judge's R & R and is incorporated herein by reference.[1]  It was also summarized

succinctly by the Minnesota Supreme Court:

> [Petitioner] was indicted by a Blue Earth County grand jury of four counts of
> first-degree murder, one count of second-degree murder, two counts of first-
> degree aggravated robbery, three counts of second-degree assault, three
> counts of kidnapping, and three counts of criminal vehicular operation
> causing injury, arising out of the shooting death of his ex-wife Svetlana and
> the kidnapping of their three children.  Because [Petitioner] pleaded not guilty
> and not guilty by reason of mental illness, the district court bifurcated the
> trial.  The jury found [Petitioner] guilty of all counts and rejected his not-
> guilty-by-reason-of-mental-illness defense.   On direct appeal, [Petitioner]
> argue[d] that the district court erred by: (1) declining to remove a prospective
> juror for cause; (2) making allegedly improper comments to the jury;
> (3) denying his request to testify on surrebuttal; (4) determining that his 9–
> year–old daughter was incompetent to testify; and (5) failing to inquire into
> the nature of his pretrial complaints about counsel appointed to represent him.
> [Petitioner] also raise[d] various pro se claims. . . .

Minnesota v. Munt, 831 N.W.2d 569, 574 (Minn. 2013).  The pro se claims included

prosecutorial misconduct, violation of the right to an impartial jury, and ineffective

assistance of counsel, among others.  See id. at 587–88.  The Minnesota Supreme Court

rejected Petitioner's arguments and affirmed his conviction.  See id. at 574.

---

[1]    The Court recites background facts only to the extent necessary to rule on
Petitioner's objections.

On March 13, 2014, Petitioner filed his Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 11]) ("Amended Habeas Petition"), along with a supporting memorandum [Doc. No. 12], in this Court.[2]  The Amended Habeas Petition includes four grounds for relief:  (1) Petitioner's right to trial by an impartial jury was violated; (2) Petitioner was denied a fair trial because of prosecutorial misconduct; (3) there was insufficient evidence to support Petitioner's conviction for premeditated murder; and (4) Petitioner received ineffective assistance of counsel during his trial.  (Am. Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 11] ("Am. Pet.") at 8–11.)  Respondent filed an Answer [Doc. No. 14], a memorandum [Doc. No. 15], and an appendix [Doc. No. 16] on June 18, 2014, opposing the Amended Habeas Petition.  Petitioner's reply [Doc. No. 20] was filed on July 14.

On November 4, the Magistrate Judge issued his R & R, recommending that Petitioner's Amended Habeas Petition be denied, the action be dismissed with prejudice, and a Certificate of Appealability not be granted.  (R & R [Doc. No. 24] at 19.)  Petitioner's Objections were filed on November 20.  He objects to the Magistrate Judge's conclusion on each ground for relief and requests a Certificate of Appealability.  Respondent neither objected to the R & R nor responded to Petitioner's objections.

---

[2]      The Magistrate Judge ordered that Petitioner's original Petition [Doc. No. 1] and supporting memorandum [Doc. No. 2], which totaled 159 pages, be stricken from the record as "unreasonably and unnecessarily burdensome."  (Order dated Feb. 11, 2014 [Doc. No. 8] at 2.)  Petitioner was granted leave to file an amended petition and memorandum.  (See id. at 3–4.)

## III.    DISCUSSION

The district court reviews de novo those portions of the R & R to which a specific objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b). As for Petitioner's underlying claims, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), describes the standard for granting writs of habeas corpus made by persons in state custody:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

In order to obtain habeas relief in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011). Under the "contrary to" clause of § 2254(d)(1), a federal court may grant a habeas writ "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case

4

differently than th[e] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant a habeas writ "if the state court identifies the correct governing legal principle from [the U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the application must also be "objectively unreasonable."  Id. at 409.

### A.      Violation of Right to Trial by an Impartial Jury

Petitioner first objects to the Magistrate Judge's determination that his biased jury claim fails.  (Petr's Objs. at 2–3.)  Through the Fourteenth and Sixth Amendments, defendants in state criminal cases are guaranteed the right to trial by an impartial jury.  See Duncan v. Louisiana, 391 U.S. 145, 149 (1968); United States v. Johnson, 688 F.3d 494, 500 (8th Cir. 2012) (citing U.S. Const. amend. VI).  "This 'constitutional guarantee has not been granted if any member of the jury was biased.'"  Johnson, 688 F.3d at 500 (citation omitted).  However, "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Irvin v. Dowd, 366 U.S. 717, 723 (1961) (citations omitted).

In his direct appeal, Petitioner challenged the trial court's failure to remove jurors B.S. and M.L., among others.  (See Resp'ts App. [Doc. No. 16] § I (Appellant's Br.) at 18–24; id. § K (Appellant's Pro Se Supplemental Br.) at 33–42.)  As for B.S., the Minnesota Supreme Court concluded that her statement during voir dire—i.e., that "'if you confess then you are aware that you did [it], so basically mental illness or not you are [aware] of what you did so you should be held responsible,'"—did not demonstrate actual bias.  Munt, 831 N.W.2d at 577.  Specifically, the court found that B.S.'s statement did not "demonstrate[] a strong and deep impression that closed her mind against [Petitioner's] mental illness defense" because there was no evidence that she knew the legal meaning of "mental illness."  Id. at 578.  In addition, the court determined that, in light of her other voir dire responses in which she stated that she would be able to follow the court's instructions on the law and knew of no other reason why she could not be impartial, B.S. "[did] not indicate an inability or unwillingness to set aside her personal opinion and fairly evaluate [Petitioner's] mental illness defense."  Id. at 579.  As for the other jurors challenged by Petitioner in his pro se brief, the Minnesota Supreme Court determined that they had not admitted to actual bias or, alternatively, that they had been rehabilitated.  Id. at 588.  As an example, the court pointed to juror M.L., who—although admitting to selling lumber to a witness several years prior and stating that it would be difficult to set aside her belief that Petitioner had shot his ex-wife—stated that "she could be fair and impartial and base her decision on evidence admitted and the law as instructed."  Id.

In his Amended Habeas Petition, Petitioner again argues that he was deprived of an impartial jury, specifically referencing jurors B.S., A.M., L.S., R.S., and M.L.  (Am. Pet. at 8.)  According to Petitioner, B.S. should have been struck because she stated that she would hold a person responsible for a crime even if the person was mentally ill, A.M. because she stated in her juror questionnaire that Petitioner was guilty, L.S. because he provided inconsistent responses in voir dire and his juror questionnaire, R.S. because he had connections to some of the individuals involved in the case, and M.L. because she did business with one of the witnesses and said she believed that Petitioner shot his ex-wife.  (See id.; Mem. in Supp. of Am. § 2254 Mot. [Doc. No. 12] at 2–4.)  After evaluating these allegations and the cases cited by Petitioner, the Magistrate Judge determined that Petitioner failed to demonstrate that the Minnesota Supreme Court reached a decision contrary to, or unreasonably applied, clearly established federal law as determined by the U.S. Supreme Court.  (See R & R at 7–11.)

Petitioner's objections to these findings lack merit.  (See Petr's Objs. at 2–3.) First, although Petitioner claims that the Magistrate Judge ignored the bulk of Petitioner's allegations as to each of these jurors, he fails to identify to which allegations he is referring or how those allegations would render the outcome any different.  Second, contrary to Petitioner's contention, the Magistrate Judge correctly determined that the U.S. Supreme Court's decision in Morgan v. Illinois, 504 U.S. 719 (1992), does not establish that the failure to strike B.S. was reversible error.  Rather, the Court in that case dealt with voir dire issues specific to the sentencing phase for a capital offense and held that a defendant may challenge for cause a prospective juror who maintains that he would

7

automatically vote to impose the death penalty in every case.  Id. at 721, 729.  Likewise,

the failure to remove juror B.S. is not contrary to Hughes v. United States, 258 F.3d 453

(6th Cir. 2001),[3] because the juror found to be biased in that case had made an "express

admission of bias, with no subsequent assurance of impartiality."  Id. at 460 (emphasis

added).  Third, although Petitioner claims that M.L.'s and L.S.'s "failure to honestly

answer [a] material question" constitutes grounds for a new trial, Petitioner fails to

explain why the Minnesota Supreme Court's decision that those jurors did not express

actual bias was an unreasonable determination of the facts in light of the evidence

presented.  Fourth, while Petitioner contends that R.S.'s "connections to [the] case" were

"inappropriate," Petitioner points to no U.S. Supreme Court precedent to support his

argument.  Fifth, Petitioner fails to explain his belief that review is necessary under

United States v. Rowe, 106 F.3d 1226 (5th Cir. 1997), a case in which the trial court

judge committed reversible error in not dismissing the jury panel after having intimidated

the jury pool and rendered it impossible to determine impartiality.  Id. at 1229–30.

Finally, Petitioner does not explain why a failure to rehabilitate any of the jurors would

have been contrary to established U.S. Supreme Court precedent in light of the state

court's finding that they had not expressed actual bias.  Accordingly, habeas relief is not

warranted in this case on the grounds of juror bias.

---

[3]     Although many of the cases cited by Petitioner are Circuit Court opinions rather
than U.S. Supreme Court opinions, this Court will address his arguments.

**B.      Prosecutorial Misconduct**

Petitioner next objects to the Magistrate Judge's determination that Petitioner is not entitled to a writ of habeas corpus based on his prosecutorial misconduct claim.  (See Petr's Objs. at 3–4.)  Petitioner's Amended Habeas Petition alleges several instances of prosecutorial misconduct, all of which were originally raised in his pro se brief to the Minnesota Supreme Court:   the prosecutor's claim that certain alleged child abuse occurred months in the past was not supported by the evidence, the prosecutor claimed that a witness had observed domestic violence even though the witness had no such first-hand knowledge, the prosecutor solicited hearsay testimony that he knew was untrue, the prosecutor's claim that Petitioner and another individual were the only individuals to report child abuse was not supported by the evidence, the prosecutor asserted his own opinions, the prosecutor tried to mislead the jury by conflating two episodes of child abuse, the prosecutor advanced theories unsupported by the record, the prosecutor made inflammatory statements about Petitioner's "selfishness" during his closing argument, the prosecutor tried to shift to Petitioner the burden of explaining inconsistencies in the government's case, and the prosecutor tried to mislead the jury by presenting irrelevant facts about the truck's black box.  (See Am. Pet. at 9; Resp'ts App. § K (Appellant's Pro Se Supplemental Br.) at 5–20.)

On direct appeal, the Minnesota Supreme Court summarized Petitioner's allegations as claims that the prosecutor referred to facts not in evidence and determined that, because Petitioner's counsel had not objected during trial, the claims must be reviewed for plain error.  Munt, 831 N.W.2d at 587.  The court found that "none of [Petitioner's] claims of prosecutorial misconduct constitute error that warrant further review."  Id.  As for the

closing argument, in particular, the court determined that the government may present "'all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence,'" and that the allegedly improper remarks were "well-supported by inferences drawn from [the] evidence." Id. (quoting Minnesota v. Pearson, 775 N.W.2d 155, 163 (Minn. 2009)).

Federal habeas relief generally is not warranted on the grounds of prosecutorial misconduct unless the misconduct injected enough unfairness into the trial to render the conviction a denial of due process. Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (citation omitted). To qualify, "improper remarks by a prosecutor must be 'so egregious that they fatally infect [] the proceedings and render[] [a defendant's] entire trial fundamentally unfair.'" Id. (citation omitted). The petitioner must demonstrate "'that absent the alleged impropriety the verdict probably would have been different.'" Id. (citation omitted). As for statements made during a closing argument, habeas review is "exceptionally limited," and "relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

Applying these standards, the Magistrate Judge determined that in cases involving alleged prosecutorial misconduct more egregious than this, courts have not found a denial of due process, and so the Minnesota Supreme Court's rejection of Petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. (R & R at 12.) The Magistrate

Judge also found that Petitioner failed to demonstrate that unconstitutional prosecutorial misconduct was the reason for his conviction or that the Minnesota Supreme Court's decision was contrary to U.S. Supreme Court law or based on an unreasonable determination of the facts.  (Id. at 13.)

Despite Petitioner's objections to the contrary, (see Petr's Objs. at 3–4), the Magistrate Judge correctly determined that Petitioner is not entitled to relief on this claim. First, Petitioner's general objections that the Magistrate Judge and Minnesota Supreme Court "ignored bulk of substance of allegations" are so lacking in specificity as to prevent this Court from conducting a review.  See D. Minn. LR 72.2(b)(1) (requiring that objections be "specific").  Second, although Petitioner again challenges the prosecutor's references to Petitioner's "selfishness," as the Magistrate Judge concluded, such a statement does not rise to the level of prosecutorial misconduct constituting reversible error under U.S. Supreme Court precedent.  See, e.g., Darden v. Wainright, 477 U.S. 168, 180–81 (1986) (finding that the prosecutor's reference to the defendant as an "animal" during closing argument did not violate the defendant's due process rights); Kellogg v. Skon, 176 F.3d 447, 451–52 (8th Cir. 1999) (finding that the prosecutor's references to the defendant as a "monster," "sexual deviant," and "liar" did not render the trial fundamentally unfair).  Third, the cases cited by Petitioner—to the extent that they are relevant[4]—do not demonstrate that the Minnesota

---

[4]     Petitioner cites to two cases that are not at all relevant to the present matter.  First, Petitioner cites to United States v. Tory, 52 F.3d 207 (9th Cir. 1994), "regarding cumulative effect."  (Petr's Objs. at 4.)  Petitioner appears to be asserting a new argument that the cumulative effect of the alleged prosecutorial misconduct warrants reversal in this case.  However, Tory does not discuss prosecutorial misconduct, Ninth Circuit law is not applicable in this case, and Tory cites to no U.S. Supreme Court law regarding

Supreme Court's rejection of his claims was unreasonable in light of the evidence presented, or was contrary to U.S. Supreme Court precedent.  See United States v. Childress, 58 F.3d 693, 715–19 (D.C. Cir. 1995) (reviewing allegations that the prosecutor made statements unsupported by the evidence and inflammatory statements, and finding no reversible error); United States v. Tajeddini, 996 F.2d 1278, 1282–86 (1st Cir. 1993) (reviewing the prosecutor's alleged reliance on matters not in evidence, statements of personal opinion, and inflammatory remarks under a plain error standard and finding no error); United States v. Hurst, 951 F.2d 1490, 1502 (6th Cir. 1991) (finding allegations that the prosecutor made statements of personal opinion to be without merit).  Finally, Petitioner has not cited to any evidence in the record that contradicts the Minnesota Supreme Court's conclusion that the prosecutor's allegedly improper statements were supported by inferences drawn from the evidence.  Therefore, habeas relief is not warranted in this case on the grounds of prosecutorial misconduct.

### C.        Insufficient Evidence

Petitioner also objects to the Magistrate Judge's denial of Petitioner's claim that there was insufficient evidence to support his conviction.  (Petr's Objs. at 7.)  The

---

cumulative effect.  More importantly, Petitioner does not attempt to explain how—in light of his inability to demonstrate that any of the individual allegations of misconduct were improper—the alleged conduct as a whole was improper.

Second, Petitioner cites to Johnson v. United States, 520 U.S. 461 (1997), for the proposition that "the prosecutorial misconduct was plain error."  (Petr's Objs. at 4.) However, Johnson is inapposite because it deals only with the proper application of Federal Rule of Criminal Procedure 52(b)'s plain error test in the context of a trial court's failure to submit to the jury the issue of materiality in a perjury prosecution.  See Johnson, 520 U.S. at 463–70.

Magistrate Judge found that Petitioner's claim was procedurally defaulted because Petitioner did not raise the issue on direct appeal to the Minnesota Supreme Court, as required by Minnesota state law.  (R & R at 17.)  Therefore, the Magistrate Judge determined, this Court could only review the merits of the claim if Petitioner demonstrated either cause for the default and actual prejudice, or a fundamental miscarriage of justice, neither of which is applicable in this case.  (Id. at 17–18.)

In response, Petitioner argues that:  (1) neither the Magistrate Judge nor the Minnesota Supreme Court construed his pleadings liberally, as is required for a pro se petitioner; (2) neither state procedure nor federal law can infringe on his constitutional rights, and the AEDPA and word limits are unconstitutional because they impede his right to redress; (3) his claims have merit, but he was impeded from presenting them because he lacks legal knowledge and had limited time and access to the library; and (4) any violation of a constitutional right is a miscarriage of justice.  (See Petr's Objs. at 7, 9–16.)

As the Magistrate Judge correctly noted, "a federal court may usually only consider 'those claims which the petitioner has presented to the state court in accordance with state procedural rules."  McCall v. Benson, 114 F.3d 754, 756–57 (8th Cir. 1997) (citation omitted).  Thus, according to the Eighth Circuit:

> before [the federal court] may reach the merits of a habeas petition, [the federal court] must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.  When the petitioner has failed to do so, [the federal court] must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits.  If state procedural rules prevent the

petitioner from obtaining such a hearing, then the petitioner is also procedurally barred from obtaining habeas relief in a federal court unless he can demonstrate either cause and actual prejudice, or that a miscarriage of justice will occur if [the court] do[es] not review the merits of the petition.

Id. at 757 (internal citations omitted).  "To meet [the miscarriage of justice] exception, 'a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'"  Oglesby v. Bowersox, 592 F.3d 922, 926 (8th Cir. 2010) (citation omitted).

Petitioner's objections fail to demonstrate that he fairly presented his insufficiency of the evidence claim to the state court, that he had cause for his failure to do so,[5] or that a miscarriage of justice will result if this Court does not review the merits of that claim. First, although Petitioner generally claims that his pleadings were not liberally construed by the Minnesota Supreme Court or the Magistrate Judge, Petitioner fails to point to any portion of his pleadings that he contends should have been—but was not—liberally construed to include his insufficiency of the evidence claim.  And, having inexplicably failed to raise the claim on direct appeal, Petitioner would not now be entitled to a hearing on that claim.  See Minnesota v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976) (stating that, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief").  Second, Petitioner alleges no manner in which state procedural rules or word limits prevented him from presenting that claim on direct appeal, and the

---

[5]     Because Petitioner fails to demonstrate cause for the default, the Court need not reach the issue of prejudice.  See Oglesby, 592 F.3d at 926 (declining to address the question of prejudice where the petitioner failed to establish cause for his default).

AEDPA's requirement that Petitioner first seek recourse for his federal claims in state court is not unconstitutional.  See, e.g., Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012) (applying the doctrine of procedural default); McIntyre v. Mahoney, No. CV 06-83-GF-SEH, 2008 WL 1743446, at *5 (D. Mont. Apr. 14, 2008) (rejecting the petitioner's argument that "the doctrine of procedural default amounts to an unconstitutional suspension of the writ"); Potvin v. Powers, No. CV 13-7165-DOC (PJW), 2014 WL 6841748, at *2 (C.D. Cal. Dec. 2, 2014) (rejecting the § 2254 petitioner's argument that the AEDPA's exhaustion requirement is unconstitutional and stating that "the Supreme Court has consistently upheld the exhaustion doctrine").  Third, lack of legal training is insufficient to establish cause for failure to raise claims on direct appeal.  See, e.g., Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988) (finding that a petitioner's "pro se status and educational background are not sufficient cause for failing to pursue state-court remedies").  Likewise, where a prisoner is represented by counsel—as Petitioner was on direct appeal—he has an adequate opportunity to present his claims to the courts, and any alleged limitations on access to the prison library do not deprive him of access to the courts.  See Entzi v. Redmann, 485 F.3d 998, 1005 (8th Cir. 2007) (citing Bounds v. Smith, 430 U.S. 817, 825 (1977)).  Finally, the miscarriage of justice exception only applies when a petitioner presents new evidence that demonstrates his innocence of the underlying crime, which Petitioner has failed to do.  Accordingly, Petitioner may not obtain habeas relief in this Court relating to his insufficiency of the evidence claim.

### D.    Ineffective Assistance of Counsel

Finally, Petitioner objects to the Magistrate Judge's determination that his ineffective assistance of counsel claim fails.  (See Petr's Objs. at 5–6.)  In his appeal of his conviction to the Minnesota Supreme Court, Petitioner argued through appellate counsel that the trial court should have made an inquiry into the nature of Petitioner's complaint at a pre-trial hearing that his attorneys were not "'pursuing [his] objectives.'" (Resp'ts App. [Doc. No. 16] § I (Appellant's Br.) at 37.)  In his pro se brief, Petitioner asserted that his trial counsel failed to, among other things, discredit or impeach certain witnesses, obtain certain evidence, obtain expert witnesses, and make certain objections. (See id. § K (Appellant's Pro Se Supplemental Br.) at 46–63.)  Petitioner also asserted that his trial counsel had conflicts of interest because they put their professional relationships ahead of Petitioner's interests.  (See id. at 51, 64–65.)  As for the argument raised by Petitioner through his appellate counsel, the Minnesota Supreme Court determined that Petitioner "failed to establish exceptional circumstances that would warrant a further inquiry into his complaints."  Munt, 831 N.W.2d at 587.  And, the court declined to consider the arguments Petitioner raised in his pro se brief because he failed to cite evidence in the record or legal authority to support his claim.  Id. at 588.

Petitioner raised the arguments again in his Amended Habeas Petition.  (See Am. Pet. at 10.)  The Magistrate Judge, applying the AEDPA standard, found that Petitioner failed to establish that the state court's determination that he was not entitled to further inquiry regarding the effectiveness of his appointed trial counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by

the U.S. Supreme Court.  (R & R at 14.)  The Magistrate Judge also determined that

Petitioner had procedurally defaulted on his pro se ineffective assistance of counsel claim

because it was waived on appeal due to his failure to comply with Minnesota law.  (Id. at

15–16.)  As to the pro se claim, the Magistrate Judge also found that there was no

demonstrated cause for the default and resulting prejudice, or a demonstration that failure

to consider the claims would result in a fundamental miscarriage of justice.  (Id. at 16

n.5.)

    In his objections, Petitioner argues that the Magistrate Judge and state court

ignored the bulk of his allegations of ineffective assistance and "were clearly in error and

contrary to the Constitution and precedents."  (Petr's Objs. at 5.)  Petitioner asserts that

his pro se brief to the Minnesota Supreme Court detailed the wrongs at issue, with

citations to precedent.  (See id. at 5–6.)  Finally, Petitioner argues that state law cannot

deprive him of his constitutional rights, that the Magistrate Judge failed to liberally

construe his pleadings, and that he faced many obstacles in terms of the availability of

library resources in the preparation of his pleadings.  (See id.)

    The Magistrate Judge properly determined that Petitioner's ineffective assistance

of counsel claims lack merit.  First, Petitioner fails to demonstrate that the Minnesota

Supreme Court's decision as to his limited complaint that his attorneys were not

"pursuing his objectives" was contrary to, or involved an unreasonable application of,

U.S. Supreme Court precedent, or was based on an unreasonable determination of the

facts.  The only cases cited by Petitioner in his objections related to this claim are

Jamison v. Lockhart, 975 F.2d 1377 (8th Cir. 1992), and Wood v. Georgia, 450 U.S. 261

(1981), and neither of those cases mandates a different result.  In <u>Jamison</u>, the petitioner argued that his procedural default on his ineffective assistance of counsel claim was caused by his trial counsel's conflict of interest.  975 F.2d at 1379.  The court determined that the existence of an actual conflict of interest could constitute cause to excuse a procedural default and remanded the case to the district court to explore whether such a conflict existed where the petitioner's trial counsel and two of the prosecution's witnesses allegedly all worked for the same employer.  <u>Id.</u> at 1379–81.  And, in <u>Wood</u>, the U.S. Supreme Court found that the record demonstrated the possibility of a conflict of interest where the defendants' counsel was hired and paid for by the defendants' employer, and the defendants were facing prison time due to the employer's actions.  450 U.S. at 267–71.  The facts in these cases are materially distinguishable from the facts in the present case.

Second, Petitioner fails to demonstrate that his <u>pro se</u> claim is not procedurally defaulted.  As the Magistrate Judge properly noted, "[w]here a state court relies on a procedural rule to decline to consider the merits of a claim on appeal, and that rule is firmly established and regularly followed, such claims are procedurally defaulted for purposes of federal habeas review."  (R & R at 15 (citing <u>Barnett v. Roper</u>, 541 F.3d 804, 808–10 (8th Cir. 2008)).)  Here, the Minnesota Supreme Court relied on <u>Minnesota v. Sontoya</u>, 788 N.W.2d 868, 876 (Minn. 2010), and <u>Minnesota v. Bartylla</u>, 755 N.W.2d 8, 22 (Minn. 2008), in declining to consider Petitioner's claim based on his failure to cite evidence in the record or legal authority supporting his claim.  <u>Munt</u>, 831 N.W.2d at 588.  As those cases, and others, demonstrate, the rule that <u>pro se</u> claims are waived on appeal

if not supported by citations to the record or legal authority is firmly established and regularly followed in Minnesota.  See also Minnesota v. Krosch, 642 N.W.2d 713, 719 (Minn. 2002) ("The brief contains no argument or citation to legal authority in support of the allegations and we therefore deem them waived.").

Although Petitioner claims that he did cite to legal authority in his pro se brief to the Minnesota Supreme Court, (Petr's Objs. at 6), this Court will not second-guess the Minnesota Supreme Court's application of its own procedural rules.  See Clemons v. Luebbers, 381 F.3d 744, 751 (8th Cir. 2004) ("[F]ederal courts do not look at whether state courts have correctly applied their own procedural rules.").  Rather, if such rules were applied to bar the claim—which was the case here—a petitioner must show cause and prejudice, or actual innocence, as discussed above.  Id.  Petitioner fails to satisfy either test:  Petitioner had the ability to—but did not—fully set forth his claim on direct appeal, and, because he was represented by counsel, the existence of any alleged limitations of the prison library do not constitute cause for failing to do so, see Entzi, 485 F.3d at 1005 (citing Bounds, 430 U.S. at 825); and Petitioner has not presented new evidence that demonstrates his innocence of the underlying crime, see Oglesby, 592 F.3d at 926.  Accordingly, Petitioner is not entitled to habeas relief in this Court relating to his ineffective assistance of counsel claim.

E.      Certificate of Appealability

Finally, Petitioner objects to the Magistrate Judge's denial of his request for a Certificate of Appealability ("COA").  (See Petr's Objs. at 7–8.)  A state prisoner may not appeal the denial of a 28 U.S.C. § 2254 habeas petition unless he is granted a COA.  28

U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A COA will not necessarily be granted simply because an appeal is pursued in good faith and raises a non-frivolous issue.  Flieger v. Delo, 16 F.3d 878, 882 (8th Cir. 1994).  Instead, the prisoner must satisfy a higher standard; he must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings."  Id. (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991)).

The Magistrate Judge correctly determined that Petitioner failed to make a substantial showing of the denial of a constitutional right regarding his claims for violation of the right to a fair trial by an impartial jury insofar as it relates to the failure to remove jurors M.L., A.M., L.S., and R.S.; prosecutorial misconduct; insufficiency of the evidence; and ineffective assistance of counsel.  It is unlikely that another court, including the Eighth Circuit Court of Appeals, would decide those claims any differently than they have been decided here.  Therefore, appellate review is not warranted, and the Magistrate Judge properly denied Petitioner's request for a COA as to those claims.  However, this Court will grant Petitioner a COA on his claim for violation of the right to a fair trial by an impartial jury insofar as it relates to the failure to remove juror B.S.  Three Justices of the Minnesota Supreme Court dissented from the majority's conclusion that the trial court did not abuse its discretion in declining to remove B.S. for cause on the grounds that B.S. demonstrated actual bias during voir dire and was not properly rehabilitated.  See Munt, 831 N.W.2d at

588 (Wright, J., dissenting); id. at 594 (Page, J. and Anderson, J. joining in Wright, J.'s

dissent).  This is evidence that the issue could be "debatable among reasonable jurists."

### THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Petitioner's  Objections [Doc. No. 28] to the Magistrate Judge's November 4, 2014, R & R [Doc. No. 24] are **OVERRULED IN PART AND SUSTAINED IN PART**;

2.    The Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the Magistrate Judge's R & R [Doc. No. 24];

3.    Petitioner's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. No. 11] is **DENIED**;

4.    Petitioner's claims are **DISMISSED WITH PREJUDICE**; and

5.    A Certificate of Appealability is **GRANTED** only as to Petitioner's Sixth Amendment claim for the right to an impartial jury to the extent that it relates to the state district court's failure to remove juror B.S.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  January 12, 2015              s/Susan Richard Nelson
                                       SUSAN RICHARD NELSON
                                       United States District Judge

21